THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES ROBINSON, Defendant-Appellant.

Third District   No. 76-396

Opinion filed May 3, 1978.

Robert Agostinelli and Gary R. Garretson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (James E. Hinterlong, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendant Charles Robinson appeals from a conviction of burglary entered in the Circuit Court of Will County following a jury trial. Defendant was sentenced to a term of from three to nine years

imprisonment in the penitentiary. On appeal, defendant argues that (1) defendant was denied his right to effective assistance of counsel in that there existed a *per se* conflict of interest where the defendant was represented by a full-time assistant public defender and where certain part-time assistant public defenders' private law firms had previously represented the victim of the burglary with which defendant was charged, and (2) defendant did not make a knowing and intelligent waiver of his counsel's conflict of interest.

The record establishes that on February 4, 1976, defendant Charles Robinson and a co-defendant Beverly Wilder were charged by information with the offense of burglary in violation of section 19—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 19—1). At defendant's arraignment on February 4, 1976, defendant was represented by William Phelan, a full-time Will County assistant public defender. It appears that subsequent to defendant's arraignment, Alex Bonds, a part-time Will County public defender, was assigned the responsibility of defendant's case. On April 14, 1976, Mr. Bonds, in a conversation with Assistant Will County State's Attorney William Ford, indicated that one of Mr. Bonds' associates in a private law firm had, in August of 1975, represented a Mr. Witt in the purchase of Sully's Blue Ribbon Tap, the business which was the victim of defendant's alleged burglary. Mr. Bonds indicated at that time that he no longer had any professional contact with Mr. Witt, although Mr. Witt still owed some money for attorney's fees in the purchase transaction. On April 15, 1976, it was agreed that Mr. Bonds would withdraw as defendant's counsel and that another assistant public defender would be appointed.

On April 20, 1976, Will County State's Attorney Martin Rudman and Public Defender Samuel Andreano discussed the matter before the trial court. It appears that the Will County public defender has five part-time assistants who are engaged in private practice in five different law firms, and three full-time assistants who have no professional interests other than their work in the public defender's office. It further appears that within the public defender's office each case is considered the case of the individual attorney to whom it is assigned, and that each full-time public defender is independent of, and is not supervised by, any of the part-time assistant public defenders. The Will County Public Defender also stated that his full-time assistants have no interest whatever in whether a part-time assistant realizes fees from work outside the public defender's office.

The trial court then informed defendant Robinson and his co-defendant Wilder of Mr. Bonds' relationship with Mr. Witt and with the public defender's office, and explained the nature of the possible conflict of interest involving Mr. Bonds and Mr. Witt and how this conflict could possibly affect the defendants. Defendant and his co-defendant

acknowledged that they understood what the court had told them. The trial court inquired of defendants whether they would object to the appointment of a full-time assistant public defender to represent them. When asked if he understood the problem which the court was trying to explain, defendant Robinson stated that he did not. He then said that he saw no apparent problem in the public defender representing him, and that it would make no difference to him if Mr. Bonds represented him. At another point defendant expressed some concern that an assistant defender might be influenced by Mr. Bonds relationship with Mr. Witt. The trial court indicated to defendant that if the public defender's office was not appointed, then a new appointed lawyer might not be prepared to go to trial promptly, and that such circumstance might result in defendant having to waive his right to a speedy trial. After being fully advised by the trial court of the consequences of his (defendant's) decision, defendant indicated that he had no objection to the appointment of full-time assistant public defender Daniel Kallan to represent defendant.

On April 21, 1976, it was called to the trial court's attention that Michael Murcer and David Kozlowski, who had been in private practice together and who were also part-time assistant public defenders, had performed legal work for Mr. Witt in the past. After defendant and his co-defendant were again informed of the independence of the assistant public defenders within the public defender's office; of the possible impact that the appointment of counsel outside of the public defender's office could have on their right to a speedy trial, and of the relationships of the part-time assistants to Mr. Witt, defendant stated that he had no objection to his representation by assistant public defender Daniel Kallan.

The cause then proceeded to trial. The evidence indicated that at about 4:25 a.m. on December 23, 1975, City of Joliet police officers, investigating a report of breaking glass, discovered a broken window at Sully's Blue Ribbon Tap and found defendant and his co-defendant inside Sully's Blue Ribbon Tap. The evidence indicated that defendant and his co-defendant were preparing to remove a number of bottles of liquor and a television set from the establishment. Mr. Witt testified at trial that he was the lessee of the premises, and that he did not give defendant authority to be in the tavern after closing. There was no dispute as to this issue.

Following presentation of the evidence, the jury found defendant guilty of burglary. Defendant filed a motion for a new trial, which made no reference to an issue of conflict of interest or to any inability of defendant's eventual trial counsel to properly prepare and present defendant's defense. The motion for new trial was denied, and the trial

court sentenced defendant to a term of from three to nine years in the penitentiary, with credit for 165 days served.

■■■ On appeal, defendant first argues that he was denied his right to effective assistance of counsel in that there existed a *per se* conflict of interest where defendant was represented by a full-time assistant public defender and where part-time assistant public defenders' private law firms had previously represented Mr. Witt, the victim of the burglary with which defendant was charged. With respect to this issue, the Illinois Supreme Court stated in *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67:

> "This court adopted a *per se* conflict-of-interest rule in *People v. Stoval* (1968), 40 Ill. 2d 109, 112, whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others, with even closer scrutiny being applied where counsel is appointed for defendant. (40 Ill. 2d 109, 113.) The test is not and cannot be based only upon the source of a financial gain by the attorney. A rule based solely on financial gain would not only be unworkable in the everyday practice of law but would also have no necessary correlation with the conflicts of interest that arise in such practice. The *Stoval* rule, based upon actual commitments to others, is both workable and necessarily correlates with such conflicts. See *People v. Kester* (1977), 66 Ill. 2d 162, 166-69."

In the instant case, some part-time assistants in the Will County Public Defender's Office, in the course of their private practice not connected with the public defender's office, had rendered professional service to Mr. Witt, the victim of defendant's alleged burglary and a prospective witness at defendant's trial. It is clear, therefore, that representation of defendant by these part-time assistant public defenders would have been construed as involving a *per se* conflict of interest under the *Stoval* rule. We note, however, that defendant's appointed counsel in the instant case was a full-time assistant public defender having no professional interests other than his work with the Will County Public Defender's Office. The record is devoid of any indication that assistant public defender Kallan had any actual commitments to others which would act as a restraint in fully representing defendant's interests and which might create a *per se* conflict of interest under *Stoval*.

Defendant argues that the conflict of interest existing on the part of the part-time assistant public defenders should be applied to bar representation by all attorneys within the defendant's office. We are

aware that in certain situations a conflict of interest arising out of the actions of an assistant public defender in his official capacity can create disqualifying conflicts with respect to all members of the public defender's office. Thus, the Illinois Appellate Court for the Fifth District held in *People v. Freeman* (5th Dist. 1977), 55 Ill. App. 3d 1000, 371 N.E.2d 863, that a *per se* conflict of interest arises where a defendant is represented by one assistant defender during submission of his guilty plea and is represented by another member of the public defender's office on a motion to withdraw his guilty plea, where the motion alleges that the original public defender coerced the defendant into pleading guilty.

In the instant case, however, the conflicts of interest, existing with respect to some of the part-time assistant public defenders, arose from their actions in their private practices, and not through their actions as assistant public defenders. We believe that those conflicts remained personal to those part-time public defenders and could not affect representation of defendant by other assistant public defenders. In an analogous situation, the Illinois Supreme Court stated in *People v. Newberry* (1973), 55 Ill. 2d 74, 77, 302 N.E.2d 34:

> "During oral argument of this appeal, counsel further refined this assertion to a more limited one: that petitioner's trial and appellate counsel had served as head of the criminal division of the Cook County State's Attorney's office while this case was being prepared. No further facts concerning counsel's involvement, if any, in this particular prosecution were alleged either in the post-conviction petition or during argument. Moreover, no suggestion is offered as to how any acts or omissions of counsel in this case might have produced any other result. We do not believe the premise urged by defendant—that a disqualifying conflict of interest requiring reversal exists whenever a former assistant prosecutor, employed as such at the time of defendant's indictment, subsequently is appointed defense counsel—is either necessary or desirable. We perceive no inherent prejudice to defendant in that factual setting* * *."

We conclude that just as the conflicts of interest arising from the office of the State's attorney could not subsequently affect the representation by a former prosecutor in *Newberry*, the personal conflicts existing with respect to some of the part-time assistant public defenders in the instant case do not, in the absence of a showing of actual commitments to others than the defendant by the office of the public defender, give rise to a *per se* conflict of interest with respect to the office of the public defender.

Defendant seeks to extend the rule of *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, by contending that all of the personnel in the public defender's office would be disqualified by the *per se* rule to which we

have referred simply by virtue of the fact that a part-time assistant, at one time, had rendered legal service to a witness for the prosecution. The supreme court of this State, however, declined to extend the doctrine when it rendered the opinion of *People v. Newberry* (1973), 55 Ill. 2d 74, 302 N.E.2d 34. In that case, the supreme court concluded that no conflict of interest resulted from the fact that the attorney, who represented the defendant in the current case, had served as head of the criminal division of the Cook County State's Attorney's office, while the case was being prepared, but demonstrated no further involvements of such attorney in the prosecution, either in the post-conviction petition or during argument. The court pointed out that no suggestion was offered as to how any acts or omissions of the attorney for the defendant in the case might have produced any other result. The supreme court said that there was no disqualifying conflict of interest which required that the former assistant prosecutor should be disqualified.

If the *per se* doctrine were to be applied as extensively as requested by defendant in the instant case, any activity by a member of the public defender's staff (where an offense is prosecuted by a municipality), where a prior representation of the city, county or other public agency, would be construed as creating a conflict of interest as to all members of the public defender's staff. It would create an unrealistic and burdensome problem to assign and pay private counsel, and not be of any significant value to a defendant, who will be denied the services of the public defender's office and given representation by a private attorney who may or may not have the same competence as the public defenders might be able to afford a defendant.

We had been confronted with another aspect of the conflict of interest issue in this court in the case of *People v. Miller* (3d Dist. 1977), 46 Ill. App. 3d 882, 363 N.E.2d 373, where we found that even though the attorney for the defendant had previously represented his ex-wife in a divorce action but was not then currently representing the wife, it did not place the defense attorney in a posture which would require disqualification. As we look at the specific facts in the instant case, it is also obvious that there is no continuing relationship between anyone in the public defender's office and the witness Witt, even though some of the part-time attorneys who assist the public defender had done some private work for Witt in the past.

We are conscious, also, of the consequences of expansion of the *per se* conflict of interest doctrine, in the event we were to conclude that there was such a *per se* conflict of interest which disqualifies all attorneys in the public defender's office in Will County in this case. To adopt such a doctrine would mean that if there were incidents of representation, by way of illustration, by an assistant public defender in a large office such as

the Cook County Public Defender's office, then, theoretically, all members of that office would be considered to be in the category of co-partners and all disqualified to act in any cases where any assistants in that office may have had some prior employment relationship as attorneys with prosecution witnesses. Such disqualification, in such event, could potentially involve not only the public defender in his trial capacity and all the members of his staff but, also, any members of that staff in their handling of appellate procedures.

As we interpret the *Stoval* case and the doctrine announced therein, the *per se* conflict of interest interpretation should be based upon a realistic analysis applied only where the individual defense attorney personally is, in fact, or in a private partnership with, an attorney who has rendered legal service to a witness, or where the defense attorney has been involved directly in any procedures which would make him potentially influenced by a previous activity of such defense attorney which might affect his service on behalf of a defendant. We agree that this doctrine should also be applied, as it was in the case of *People v. Freeman* (5th Dist. 1977), 55 Ill. App. 3d 1000, 371 N.E.2d 863, where an assertion is made that a public defender has acted improperly in the defense of the defendant in a case, since that would potentially involve a conflict of interest through the charge of improper conduct of a public defender in the course of his duties as a public defender.

■■ We do not believe that a rigid rule can be applied in the application of the *per se* conflict of interest rule but that each case should be assessed upon the basis of reasonable and realistic factors, rather than a blind application of the rule, without relating it to the specific factors involved in each particular case.

In view of our determination of the conflict of interest issue, we do not believe that we need give consideration to the second issue raised as to waiver by defendant of the alleged conflict of interest issue in the instant case.

For the reasons stated, therefore, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

SCOTT and STENGEL, JJ., concur.