THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VLASIOS KARAS, Defendant-Appellant.

First District (2nd Division)   No. 78-1563

Opinion filed February 5, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Michael M. Lorge, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Having been found guilty by a jury of murdering by gunshot two brothers, Nick and Sam Sioras, co-owners with him of the Golden Gate Restaurant, defendant Vlasios Karas appeals from that decision and from two concurrent sentences of imprisonment of not less than 100 nor more than 300 years imposed by the trial court. Defendant presents 10 issues for review; however, only one of these need be discussed in view of our disposition of the appeal: whether a *per se* conflict of interest existed between defendant and his counsel under the circumstances of this case. For the reasons which follow, we reverse and remand for a new trial.

The operative facts upon which our order of reversal is based are that according to certain evidence, defendant and the decedents had been arguing over a period of time during the evening of July 15, 1977, in their restaurant at 3200 W. 111th Street, Chicago. Of the three, only defendant was on duty at that time but the victims remained beyond their duty hours. Shortly after 9:45 p.m. the three men entered the restaurant office. Loud voices were thereafter heard and six shots were then fired. Defendant concedes that he did the shooting and at the scene was holding a revolver which was subsequently taken from him by an investigating police officer and later identified as the lethal weapon. Although one witness claimed to have seen defendant fire the sixth shot into one decedent's chest just outside the office, other evidence indicates that after all the shots were fired, the two victims staggered out of the office, one collapsing near the service counter in the kitchen area and the other near the rear exit door. No weapons were found on or near decedents, who subsequently expired in a hospital where they were taken by ambulance. Two entry wounds in one of the victims were found in his back and two other such wounds were found in the back and side of the other.

Defendant was charged with four counts of murder. The defense

claimed that the shootings were engendered in self-defense during the course of an argument between the three men over their business relationships; that hostility had grown between defendant and the decedents as well as between him and the restaurant employees; and that decedents had intended to force defendant out of the business on the night of the shooting, a fact which the employees knew about in advance.

During a pretrial hearing on January 4, 1978, the State filed a motion to compel defendant to comply with discovery rules. Defense counsel, James E. Gierach of the law firm of Gierach, Stambulis and Schussler, Ltd., defendant's lawyer, advised the court that his law firm had incorporated the business and had retained possession of the articles of incorporation, the bylaws, the restaurant bill of sale and the corporate minute book, all of which he was turning over to the State. He asked that they be returned to him thereafter. He stated that the law firm had not yet been paid for its aforementioned legal services. Defense counsel further represented that his law partner, John Stambulis, had met with the two deceased co-owners one week prior to the shootings. He informed the court that he was considering the placement of Stambulis' name on the list of witnesses to be called by defendant based upon "* * * what was said by John or by the two deceased to John Stambulis during that meeting and·have been contemplating whether that may cause any conflict." Gierach told the court that he would give the matter more thought, but was then seeking leave to place Stambulis' name on the list of witnesses. Parenthetically, Stambulis was never called as a witness by either the defense or the State.

Nothing in the record reveals that defense counsel or the court initiated or entertained any motion or hearing at which defendant was admonished with respect to any potential conflict that may have arisen or could arise by virtue of his lawyer's relationship to the restaurant business, its owners prior and subsequent to the shooting, and his representation of defendant during the course of the criminal proceedings. No indication appears in the record of the substance of the conversations that took place between the deceased co-owners and Stambulis, although Gierach noted that he had advised the State of the contents of those conversations and agreed to reduce them to writing.

The case proceeded to trial on January 9, 1978. The State produced 14 witnesses and the defense seven. The jury found defendant guilty of having murdered both decedents, which led to the sentencing imposed on the resulting judgment previously described.

On appeal, defendant contends that he was denied effective assistance of counsel because a conflict of interest arose by virtue of his lawyer's representation of both him and the deceased co-owners of the restaurant prior to the shootings and his lawyer's concurrent

representation of defendant and of the village of Oak Lawn and the township of Worth in municipal ordinance violation cases which raised a different form of conflict of interest. Defendant argues that in each such instance a *per se* conflict of interest arose, thereby denying him efficacious legal representation contrary to his sixth amendment guarantees. The State maintains that no viable conflict of interest existed when viewed from a reasonable and realistic perspective, thereby precluding the invocation of the *per se* rule; that defendant failed to articulate this issue at trial or in his post-trial motion; and that defendant's lawyer did no municipal work which included State criminal charges. The State further asserts that defendant's lawyer conducted an able and vigorous defense and defendant received a fair trial, the results of which should be affirmed in this appeal.

Among the defense theories presented during the trial was that defendant had shot decedents following a "showdown" over the continued participation of defendant in the business and that it was decedents' intention to force him out or buy him out on the night of the shootings. In reference to his lawyer's representation of defendant and decedents in their business venture, defendant observes that the business records of the restaurant, including the articles of incorporation, bylaws, bill of sale and minute book were in his counsel's law firm's possession up to the time he produced them for the State in response to a subpoena, implying that the law firm considered itself concurrently interested in representing the business and those who would succeed to the victims' co-owners' shares of stock as survivors while defending the accused co-owner in the criminal case. Further, defense counsel sought leave to add the name of his law partner to his list of possible witnesses based upon his representation that Stambulis had met with decedents just one week prior to the shooting, thereby implying that business matters were or could have been discussed at that time, perhaps involving the effort to force defendant out of the business, which was the mainstay of his defense at trial. Defendant notes further that his lawyer had himself recognized the potential conflict of interest at that point in open court and had represented to the court that he would give the matter further thought over the ensuing weekend; however, nothing further was done of record to establish the existence or absence of the potential conflict during the trial and Stambulis, for whatever unknown reason, was never called as a defense witness.

Defendant also refers to his counsel's suggestion during jury selection concerning the volatile nature of some of the State's witnesses which required that he usher defendant into and out of the courthouse so as to avoid contact with them as well as jurors, implying that the witnesses would include relatives who might succeed to the business ownership and

become potential clients, indicating his familiarity with their attitude and emotions concerning defendant, which could have influenced decisions to be made in conducting the defense. Defendant points to the hearing in aggravation and mitigation at which he personally addressed the court concerning background facts he had wanted to testify to, such as how he had been the one to find the restaurant and had brought the decedents into the business, how they tried to remove him and had made trouble for him on the day of the shootings and before. He stated, in part, "I wanted to testify so to explain to you what happened, and my lawyer makes a mistake, and I don't know * * *."

Defendant argues that although there is no indication in the record that his lawyer did not competently represent him, or that actual prejudice resulted from that representation, or that the conflict influenced his attorney or the outcome of the cause, these facts do not render the error harmless, citing *People v. Brown* (1976), 40 Ill. App. 3d 562, 352 N.E.2d 15. Rather, he contends, reversal is required nevertheless because a *pro se* conflict of interest is evident from these circumstances. Defendant suggests the impossibility of measuring whatever "subtle influences" or "subliminal reluctance" affected the decisions of counsel when advising and representing the accused, citing *People v. Kester* (1977), 66 Ill. 2d 162, 167, 361 N.E.2d 569. We agree. The suggested implications need not necessarily be inferred from the facts; it is the potential conflict of interest with which we must be concerned. What "subtle influences" or "subliminal reluctance," if any, may have existed during the representation of defendant by virtue of the above-described relationships cannot be identified with certainty. It is for this reason that the supreme court stated in *People v. Kester* (1977), 66 Ill. 2d 162, 168:

> "As we noted in *Stoval*, it would be extremely difficult for an accused to show the extent to which this [subtle influences or subliminal reluctance to present a different defense] may have occurred. At the same time, a lawyer who may have provided an able and vigorous defense with complete loyalty to the defendant is placed in the difficult and unfortunate position of being subject to unfounded charges of unfaithful representation. The untenable situation which results for both the accused and his court-appointed attorney in such instances is one which can and should be avoided in the interests of the sound administration of criminal justice."

To the same effect are *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342; *People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196, *cert. denied* (1978), 435 U.S. 956, 55 L. Ed. 2d 809, 98 S. Ct. 1590; *People v. Drysdale* (1977),

51 Ill. App. 3d 667, 366 N.E.2d 394; and *People v. Grigsby* (1977), 47 Ill. App. 3d 812, 365 N.E.2d 481.

■■ The right to effective legal counsel is fundamental and entitles the party represented to the undivided loyalty of his attorney whether the legal services were privately secured or were the result of court appointment. (*People v. Stoval* (1968), 40 Ill. 2d 109, 111, citing *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, and quoting from *Porter v. United States* (5th Cir. 1962), 298 F.2d 461, 463; *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342.) "This is a right which demands indulging 'every reasonable presumption against * * * [its] waiver.'" (*People v. Fife* (1979), 76 Ill. 2d 418, 423, 392 N.E.2d 1345.) In *Stoval* the law firm representing the defendant charged with burglary had also previously and currently represented the store which had been burglarized as well as its owner. Quoting with approval from a case involving similar circumstances, *United States ex rel. Miller v. Myers* (E.D. Pa. 1966), 253 F. Supp. 55, 57, the following language illustrates the *Stoval* rationale (40 Ill. 2d 109, 112):

> " 'It takes no great understanding of human nature to realize that the individuals who had been burglarized might be less than happy and might go so far as to remove the attorney from their good graces if this defendant were acquitted or received a light sentence or were placed on probation. * * * The entire situation could be very embarrassing for the lawyer who is naturally interested in having the legal business of the [store owners], especially when they are much more able to compensate him for his services than the defendant. The circumstances here are such that an attorney cannot properly serve two masters.' "

As has been shown, the law firm of which defense counsel was a partner was in possession of vital corporate records and was seeking their return following the trial. It had not yet been paid for the legal services rendered, and the relationship thus may be deemed to have been active. (See *People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157 (slip op. at 8-9).) Stambulis met with and perhaps counseled the two deceased co-owners one week before the shootings, possibly with regard to the difficulties defendant and decedents were having which were central to defendant's self-defense theory. It was this conversation, what was said by Stambulis to the victims and what they said to him, that caused defense counsel to apprise the court that a latent conflict might exist.

The fact that another partner of the law firm met with the decedents rather than defense counsel does not mitigate the circumstances, since knowledge of one member of the law firm is imputed to all its members. (*People v. Grigsby* (1977), 47 Ill. App. 3d 812, 820.) Nor was the putative

conflict dissipated by the defense decision to refrain from calling Stambulis as a witness; a contrary decision might have been indicated and effectuated by an attorney who was not in the same position as defense counsel in the instant case. Defendant's suggestion, referring to the presence of decedents' families and friends throughout the trial proceedings, that defense counsel's tactical decisions might have been subconsciously influenced by a desire not to alienate them so as to enhance the possibility that his firm could receive future business from that source, poses still another instance that is both reasonable and realistic. *Cf. People v. Robinson* (1978), 59 Ill. App. 3d 514, 375 N.E.2d 582, *aff'd* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.

In light of the nuances inherent in the instant events, it would be fallacious to assume, in our opinion, that defendant, who had a minimal level of education and experience, would have been aware of the potential conflict simply by virtue of his having voluntarily engaged the services of the corporation's attorney as his defense lawyer. It should also be noted that defense counsel stressed to the trial court defendant's difficulties with the English language, necessitating the use of an interpreter during the proceedings with the observation that defendant's English proficiency was less than third or fourth grade level. The record is devoid of any evidence that defendant knowingly waived his right to representation by counsel who was free from any potential conflict of interest. Nor does it appear that he was in any way made cognizant of the significance of that potential conflict. (*Cf. People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157 (slip op. at 9-12); *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345.) The fact that he had never objected to that representation during the course of the trial nor raised it in his post-trial motions authored by the same defense counsel does not constitute a knowing waiver of this issue on appeal. See, *e.g., People v. Kester* (1977), 66 Ill. 2d 162, 168-69; *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 672. See also *People v. Fife* (1979), 76 Ill. 2d 418, 424.

This issue has been raised at defendant's first opportunity after being represented by new counsel, unlike the facts in *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182, and *People v. Eddington* (1979), 77 Ill. 2d 41, 394 N.E.2d 1185, upon which the State relies in claiming waiver. In *Lykins* the *per se* conflict claim was not raised until the appellate court rehearing, and in *Eddington* the issue was first asserted before the supreme court. Further, in *Lykins* and *Eddington,* as in *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345, the sole conflicts were alleged to have arisen by virtue of defendants' representation by special assistant attorneys general or their associates, on which basis, because of the rule's initial recognition in *Fife,* relief was limited to prospective implementation. In the case at bar, the potential conflict is alleged to have

arisen, in this branch of defendant's argument, by virtue of defense counsel's private professional association with defendant's and decedents' business relationships, a more direct involvement in the asserted conflict than those which might be inferred from generally representing the State in occasional workmen's compensation, condemnation or other noncriminal assignments.

The State contends that if this court determines there was a potential conflict of interest, the cause should be remanded for a hearing to clarify the relationship, if any, which existed between the victims and the attorney's firm, citing *People v. Owens* (1979), 69 Ill. App. 3d 599, 388 N.E.2d 170. Owens argued that he was denied effective assistance of counsel because his attorney had represented the complaining witness in a prior criminal proceeding and was not prepared for post-trial proceedings. The factors which might have indicated the existence of a *per se* conflict as established by the *Stoval, Meyers, Kester, Coslet, McClinton, Grigsby, Pendleton* and *Drysdale* records were absent from the *Owens* record and required the hearing ordered by the appellate court in order to establish their presence or absence. Here, however, the potential continuing relationship of the law firm and defense counsel to the corporation and its successor owners is reasonably inferable from the facts already established in the present record. (See Ehrmann, *The* Per Se *Conflict of Interest Rule in Illinois*, 66 Ill. Bar J. 578, 579 (1978).) Therefore, there is no need to remand this cause for an *Owens* hearing.

Defendant's further argument concerning conflict of interest alleged to have been established by virtue of the municipal representation undertaken by defense counsel as one recognized in *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345, cannot be sustained. The holding in *Fife*, even if it were applicable to the instant facts, may be applied prospectively only to cases involving prosecutions for offenses occurring subsequent to that decision. To the same effect are *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182, and *People v. Eddington* (1979), 77 Ill. 2d 41, 394 N.E.2d 1185. Since the offenses in the instant case preceded the decision in *Fife*, any benefit which might otherwise have been derived therefrom in this facet of defendant's argument is inapplicable.

■■ For the foregoing reasons we find that a conflict of interest *per se* existed in this case requiring that the cause be reversed and remanded for a new trial. Other issues raised in this appeal involve matters unlikely to recur upon retrial of the case obviating their consideration here.

Reversed and remanded.

PERLIN, P. J., and STAMOS, J., concur.