THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL L. DAVIS *et al.*, Defendants-Appellants.

First District (5th Division)  Nos. 82—867, 82—905 cons.

Opinion filed June 1, 1984.

Steven Clark, of State Appellate Defender's Office, and Barbara E. Hermansen, of Schiff, Hardin & Waite, both of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and Karen C. Wirth, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendants Michael L. Davis and Michael Boney were convicted for the offenses of home invasion and armed robbery. Each was sentenced to 60 years' imprisonment. On appeal, defendants have asserted errors in the trial court's rulings on pretrial motions, reception of evidence, allegedly prejudical remarks of the trial judge, the sufficiency of the evidence to convict, the length of sentences, and the effectiveness of trial counsel. We affirm.

Defendants were indicted for home invasion, burglary, unlawful restraint, armed violence and armed robbery involving a home in Midlothian, Illinois. Defendants filed motions to quash their arrests and suppress certain evidence. At the hearing on these motions Richard Solita testified that he is an investigator with the Chicago police department. On July 25, 1980, at about 11:30 p.m., he arrested the defendants without a warrant. He and his partner, Investigator L. Suelke, received a tip concerning an armed robbery of a home in Midlothian, Illinois. The informant stated that he had just left 743 West 61st Street in Chicago, where he had observed a group of men moving the proceeds of the armed robbery from one location to another. Suelke contacted the Midlothian police and verified the fact of the armed robbery. He thereby learned that the proceeds included rifles, a shotgun, a television set and various other household appliances. The Midlothian police described the suspects as two black males in their middle twenties; one had light skin and one had dark skin; and one had tattoos on his arm and was wearing a blue denim vest. On redirect examination, Investigator Solita stated that the description was "29 year old, dark complected and one with tattoos; denim jacket sleeveless, no shirt on." The other offender was described as a black male, 29 years old, wearing a green t-shirt and having light skin. As Investigator Solita approached 743 West 61st Street, he observed defendant Boney seated on the hood of an automobile wearing a blue denim vest and no shirt. The automobile was filled with "stolen property." Solita further testified that his report stated that he observed rifle or shotgun stocks in the car. He then placed Boney under arrest. Defendant Davis, who was carrying a small television set, then approached the vehicle and was also arrested.

Investigator L. Suelke corroborated Solita's testimony and also

stated that he observed two gun butts protruding from the passenger side windows and that he could see numerous household appliances inside the car.

Michael Davis testified that the police arrested him inside the house at 743 West 61st Street and, further, that he did not leave the house all evening and did not carry a television set outside of the house.

The trial court thereupon specifically found that Solita was credible and denied the motions.

At trial, Eileen Ames testified that she and her husband and their youngest daughter, Kathy, resided together in their home located in Midlothian, Illinois. On July 25, 1980, at about 4:45 a.m., she heard a creaking on the stairs and turned on her bedroom light. Two men walked into the bedroom. One was tall and carried a sawed-off shotgun and the other was shorter. She testified that she could see both men's faces. She identified in open court defendant Boney as the man with the shotgun and defendant Davis as the other man. Boney remained in the bedroom while Davis brought Kathy Ames into the bedroom. The two men then began ransacking the house. Davis carried a television set out of the room and Boney took Victor Ames into the basement of the home, where Ames kept his gun collection. Boney later returned with Ames and emptied the witness's purse, taking $500. The two men herded the family into the bathroom after the witness heard Davis say "Our taxi is here." The family waited until the defendants had left and then called the police. Eileen Ames testified that the house was in disarray and that her husband's 12 guns were missing. A window in the basement was open and the screen was removed. Before they had gone to bed the previous evening, the screen was in place. She identified various exhibits, including the sawed-off shotgun which she stated that Boney had carried and several of her husband's guns. She testified that she had seen Boney take several of the items. On cross-examination, she admitted that she was not looking at Boney the entire half hour that the intruders were in her home. She told the police that the man with the gun was dark complected. On redirect examination, she testified that it was fairly bright in the bedroom and that she was able to see Boney's face as well as that of the other man even though he was wearing a nylon stocking mask. She had no doubt that Boney and Davis were the persons in her home.

Kathy Ames corroborated her mother's testimony. She also identified both defendants in open court as the men in her home and also identified various exhibits as property taken from her home or carried

by the intruders. She denied telling the police that the man with the gun was light complected. She admitted failing to tell the police that the man had any facial hair although he did have a beard and mustache.

Frederick Kozick, a sergeant with the Midlothian police department, testified that he investigated the crime scene for evidence and obtained several fingerprint lifts which he took to the crime laboratory. He admitted that his police report described the taller man as light complected. However, he stated that he had made a mistake and that the description which the witnesses had given to him was that this man was dark complected.

Sergeant Harold Kaufman of the Midlothian police testified that he fingerprinted Davis and Boney after their arrest.

Richard Solita, a detective with the Chicago police department, testified that on the evening of July 25, 1980, he and other police officers went to 741 West 61st Street in Chicago. There, at the rear of a building, he observed an automobile in an empty lot. He could see a rifle stock sticking out of one of the vehicle's windows and two men, one of whom he identified in court as defendant Boney, sitting on the vehicle. Detective Solita testified that he drew his gun and ordered both men to place their hands on top of the car. At this time a man whom he identified in court as defendant Davis walked out of the house carrying a portable television set. Detective Solita ordered Davis to join the other two men. Solita testified that he looked inside the car and observed a couple of rifles, a sawed-off shotgun, a television set, and various household articles. After establishing a chain of custody, he testified that the exhibits, which had previously been identified by Kathy and Eileen Ames, were the ones found inside the vehicle. On cross-examination, Solita admitted that he had no warrant at the time he arrested the defendants and that defendant Boney had had none of the items on his person, although he was within reach of the rifle stocks in the car.

Jacqueline Farcaro testified that she is employed by the Illinois Department of Law Enforcement, Bureau of Scientific Services, as a forensic scientist specializing in latent fingerprints and other areas. She testified to her qualifications as an expert in the field of fingerprints and stated that in her opinion the latent lift (People's exhibit No. 19) and an inked print (People's exhibit No. 20) had over 20 points in common and were made by the same person. Exhibit No. 19 was a fingerprint lift which Sergeant Kozick had taken from a window screen at the Ames' home and exhibit No. 20 was Davis' fingerprint card which Sergeant Kaufman had taken. Both exhibits were ad-

mitted into evidence, along with the guns and other property recovered from the vehicle. The prosecution then rested.

Defendants' motions for directed verdict were denied and both defendants then rested.

After closing arguments and receiving instructions, including an accountability instruction from the court, the jury found both defendants guilty of home invasion and three counts of armed robbery.

At the sentencing hearing, it was revealed that each defendant has had a consistent history of legal involvements since 1969. Both Boney and Davis had prior convictions for armed robbery and aggravated battery on which they had been sentenced to the penitentiary and were on parole at the time of the instant offenses. The trial court expressly relied on the prior convictions and invoked the extended sentencing provisions of the Unified Code of Corrections in sentencing each defendant to 60 years in prison. The defendants thereafter appealed.

OPINION

On appeal both defendants are represented by counsel who have filed briefs on their behalf. In addition, the defendants have each filed briefs *pro se* which raise additional contentions. Each argument presented will be considered in its logical turn.

■ Defendants first contend that their warrantless arrests were illegal and that the trial court therefore erred in denying their motions to quash and suppress. Probable cause for a warrantless arrest exists where there are reasonable grounds to believe that the prospective arrestee has committed a crime. (*People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605; Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c).) The facts on which probable cause to arrest is based need not be sufficient to convict, but something more than a mere hunch or suspicion is required. (*People v. Gutknecht* (1984), 121 Ill. App. 3d 839, 842, 460 N.E.2d 60.) Defendants argue that their arrests were predicated on an uncorroborated informant's tip and therefore were illegal. We agree with the prosecution, however, that the arrests were effected only after the police observed the rifle or shotgun stocks and other items inside of the vehicle. The vehicle was located at the address provided by the informant and the police had already verified the fact of the robbery with the Midlothian police. Thus, the tip was corroborated in several important particulars and could support a finding of probable cause. (See *People v. Helms* (1978), 67 Ill. App. 3d 729, 733, 385 N.E.2d 127.) The issue thus becomes whether the additional facts confronting the arresting officer at the scene, together

with the tip, gave him probable cause to arrest.

We will discuss this issue first in connection with defendant Boney. The prosecution argues that at the very least the police had probable cause to arrest defendants on a charge of unlawful use of weapons. At the time of the instant arrests in 1980, however, the visibility of gun butts from within a vehicle was apparently not, in and of itself, a crime. Although *People v. Glenn* (1966), 35 Ill. 2d 483, 486, 221 N.E.2d 241, held otherwise, that decision was based on a violation of section 46 of the Game Code of Illinois (Ill. Rev. Stat. 1961, ch. 61, par. 180) which had since been repealed (see notes preceding Ill. Rev. Stat. 1979, ch. 61, par. 218). In 1980 a charge of unlawful use of weapons under subsection 24—1(a)(4) of the Criminal Code of 1961 required that the weapon be concealed. (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(4).) The police officers in the case at bar testified that the guns were visible and therefore no violation of subsection 24—1(a)(4) occurred, as that statute then provided. Nonetheless, we believe that the police had probable cause to arrest defendant Boney.

■ The police were aware that an armed robbery had recently been committed and that the proceeds included rifles, shotguns, television sets, and other household appliances. The informant had told the police that these items were being moved from the West 61st Street address. The description provided by the Midlothian police indicated that one of the offenders was a black male with dark skin who was wearing a blue denim vest without a shirt underneath. Solita testified that Boney was so attired at the time of his arrest, and in addition, that he could see rifle or shotgun stocks, a television set, and various other household appliances inside of the vehicle. Although none of these items was found on Boney's person, he was sitting on the automobile within reach of the guns, and it is not unreasonable to conclude that the various items in the car were within his control. (See *People v. Gibson* (1983), 114 Ill. App. 3d 488, 495, 449 N.E.2d 182.) While this information might not be enough to sustain a conviction (see *People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 151; *People v. Gibson*), it is sufficient to warrant a man of reasonable caution in believing that a crime was committed and that Boney had participated in its commission. (See *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, 342 N.E.2d 356; *People v. Slawek* (1981), 98 Ill. App. 3d 1146, 1149, 425 N.E.2d 26.) In light of all of the circumstances, we cannot say that the trial court's determination that the defendant's arrest was legal is manifestly erroneous. See *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 63, 405 N.E.2d 1121.

■ Whether probable cause to arrest defendant Davis existed

must be determined independently from our conclusion that Boney's arrest was with probable cause as "probable cause to arrest a particular individual does not arise merely from the existence of probable cause to arrest another person in the company of that individual." (*People v. Creach* (1980), 79 Ill. 2d 96, 102-03, 402 N.E.2d 228.) Detective Solita testified that Davis approached the vehicle while he was carrying a portable television set. The trial court was free to disregard Davis' contradictory testimony. (See *People v. Pittman* (1982), 93 Ill. 2d 169, 175, 442 N.E.2d 836.) Solita was aware that television sets were among the proceeds of the robbery and that those proceeds were being moved from the West 61st Street address. In deciding the question of probable cause, the courts deal with probabilities and are not disposed to be unduly technical; these probabilities are the factual and practical considerations of everyday life on which reasonable people, not legal technicians, act. (*People v. Robinson* (1976), 62 Ill. 2d 273, 277, 342 N.E.2d 356.) Considering all of the circumstances, including Davis' apparently transporting stolen property from the house to the automobile, there was probable cause to arrest. *People v. Robinson*; *People v. Slawek* (1981), 98 Ill. App. 3d 1146, 1149, 425 N.E.2d 26.

▮ Defendants next contend that they were not proven guilty of home invasion beyond a reasonable doubt. The home invasion statute provides that:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, ***." (Ill. Rev. Stat. 1979, ch. 38, par. 12–11.)

Defendants and the prosecution have both cited the decision in *People v. Davis* (1982), 106 Ill. App. 3d 260, 435 N.E.2d 838, and we find that case to be controlling. The evidence adduced in the case *sub judice* established that defendants entered a house in the early morning hours, ransacked the dwelling and herded the occupants into a bathroom at gunpoint. As the court in *Davis* stated, "[t]he defendant's contention that police officers can act in the line of duty while committing blatantly illegal acts strains credulity." (106 Ill. App. 3d 260, 266.) Defendants entered the residential structure at a time when the occupants would most likely be at home and asleep, thus satisfying

the reason to know requirement of the statute. (*People v. Davis* (1982), 106 Ill. App. 3d 260, 267, 435 N.E.2d 838.) Finally, the requirement that force or the threat thereof be used on the occupants while defendants are armed with a dangerous weapon was satisfied in the case at bar by the evidence that Boney carried a sawed-off shotgun. Although Davis was unarmed, the evidence was sufficient to sustain a finding of guilty of home invasion on an accountability theory. (See *People v. Muellner* (1979), 70 Ill. App. 3d 671, 681-82, 388 N.E.2d 851.) We conclude that defendants were proved guilty of home invasion beyond a reasonable doubt.

■ Defendants next contend that they were not proven guilty beyond a reasonable doubt of the armed robbery of Victor Ames. Defendants apparently base this contention on Victor Ames' failure to testify. However, the other witnesses testified unequivocally that Victor Ames was not only present but was also forced at gun point to deliver his property to defendants. A positive identification by one credible witness is normally sufficient to sustain a conviction (*People v. Molstad* (1984), 101 Ill. 2d 128, 133, 461 N.E.2d 398), and such is the case here. Further, overwhelming circumstantial evidence, including Davis' fingerprint and the recovered property, establish each defendant's guilt beyond a reasonable doubt.

■ Defendants also contend that they were denied effective assistance of counsel in that defense counsel failed to introduce certain grand jury testimony to impeach a prosecution witness and various other specified alleged omissions. The testimony in question was that of Detective Kozik at the grand jury hearing that he received a call from the Chicago police stating that they had arrested five individuals with property belonging to the Ames family. Defendants contend that this statement established that the Chicago police did not call the Midlothian police prior to the arrests and that therefore the informant's tip was uncorroborated. Defendants maintain that the failure to introduce this testimony for impeachment established incompetence of counsel. We disagree. The statement relied on by defendants was in response to the question "Was any of that property recovered and if so under what circumstances and when?" The question and the answer thereto cannot be interpreted as relating to when the first contact concerning the case occurred between the two police departments. As such, we do not view the statement as inconsistent with Kozik's trial testimony or otherwise particularly helpful to defendants' cases. The failure to introduce the statement is accordingly not incompetence. *People v. Smalley* (1984), 122 Ill. App. 3d 70, 78-79, 460 N.E.2d 866.

■ Defendants also contend that defense counsels' failure to introduce an alibi defense through defendants' testimony constituted incompetence. This decision by counsel, however, must be balanced against the possible damage to a defendant's case which may be inflicted by the prosecutor's cross-examination. This balancing is for counsel and the decision to place or not to place a defendant on the stand is a matter of trial tactics not subject to judicial scrutiny. (*People v. Smalley* (1984), 122 Ill. App. 3d 70, 79, 460 N.E.2d 866.) We conclude that defendants were not denied the right to effective representation.

■ Defendants next challenge the propriety of their sentences. Their first assertion of error therein is that the prosecutor improperly called the court's attention to another occurrence, which involved a rape, and that defendants were accordingly prejudiced. The record reflects that the prosecutor sought to introduce a map on which the Ames home and another home were apparently circled. The trial court, however, sustained the defense objection to this evidence. The supreme court in *People v. Devin* (1982), 93 Ill. 2d 326, 346-47, 444 N.E.2d 102, discussed the duty which the trial judge assumes in determining a defendant's punishment. The court there quoted *People v. Crews* (1967), 38 Ill. 2d 331, 337, 231 N.E.2d 451, stating that a judge " 'must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence.' " (*People v. Devin* (1982), 93 Ill. 2d 326, 347, 444 N.E.2d 102.) The trial court in the instant case did precisely that, and the record demonstrates that prejudice to either defendant from the other occurrence was thereby avoided.

■ Defendants next assert that the trial court failed to give due consideration to factors in mitigation as required by the Unified Code of Corrections. The record reflects that the trial court reviewed specific mitigating factors and concluded that they were not present in the instant case. Defendants contend that the trial court's "cursory review" of mitigation factors was error. However, it is clear that a sentencing judge need not recite and assign a value to each fact presented at the sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9.) We find no merit in this contention.

■ ■ Defendants also contend that the trial court relied on aggravating factors which did not exist. The court stated in commenting on the statutory factors in aggravation and mitigation:

"I have already commented no physical harm. There was threatened harm, a sawed-off shotgun was presented, people were placed in closets, bound, threatened, advised to remain si-

lent. Physical harm was threatened, but not caused."

Defendants contend that because no one was placed in a "closet" or that anyone was bound the 60 year sentences are in error. We disagree. Whether the area in which the Ames family was confined is characterized as a bathroom or a closet is not particularly significant. There was no evidence, however, that any of the victims were bound. Although error, the trial court merely noted this factor in passing; it is clear from the transcript of the sentencing hearing that the primary factor in the trial court's sentencing determination was defendants' prior convictions. Where it can be determined from the record that the weight placed on an improperly considered factor was so insignificant that it did not lead to a greater sentence, then a remandment is not required. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338.) This standard was satisfied in the instant case. Our reading of the record indicates that the trial court was of the opinion that defendants were extremely dangerous individuals who maintained careers as professional robbers even after completing prior penitentiary sentences. Therefore, we cannot say that the trial court abused its discretion in sentencing defendants to the maximum extended terms. (See *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882.

■■■ In addition to the contentions considered herein before, defendants have raised additional contentions of error in their *pro se* briefs. We have given careful consideration to each issue raised and find upon examination of the record that the additional points of error were either waived by a failure to timely object (see *People v. Robinson* (1984), 122 Ill. App. 3d 362, 368-69, 461 N.E.2d 493), or find no support in the record.

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

SULLIVAN and LORENZ, JJ., concur.