THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE DACE, Defendant-Appellant.

Third District   No. 3—86—0477

Opinion filed March 23, 1987.

HEIPLE, J., concurring in part and dissenting in part.

Thomas A. Lilien, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

At approximately 7:40 a.m. on February 21, 1985, the body of Roseleen Kilcoyne was found on the floor of Rudy's 700 Club in the city of Joliet. Kilcoyne was an employee of the club and on the preceding evening and night had tended bar and performed other tasks associated with such employment.

An autopsy was performed, and it was determined that the cause of death was two gunshot wounds to the head. During the medical examination, upon removal of the victim's blouse, it was discovered that she had abrasions on one hand and a fresh contusion on the left elbow. On the left arm were found two wounds consistent with human bite marks and four such wounds were discovered on the right arm. It was the opinion of the examiner that the bite marks had been inflicted within two hours of the victim's death.

Dr. James Rasmussen, a forensic odontologist for the office of the Will County coroner, had specialized training in bite mark analysis at the Northwestern University Dental School. The doctor determined that the bite marks were of human origin and then went through a scientific procedure of making an impression or casting of each bite mark. Ultimately four bite marks were reproduced in hard plastic. The four bite marks reflected four to eight teeth. He then consulted with Drs. Pierce and Smith of Northwestern University Dental School, who had experience in the comparison of bite marks with impressions of the same.

On March 5, 1985, a search warrant was issued for photographs and casted impressions of the teeth of the defendant, Clarence Dace. Such impressions and casts as well as photographs were made and taken of the defendant's dentition on March 6, 1985.

Dr. Larry Pierce and Dr. Steven Smith of the forensic dentistry department of Northwestern University Dental School later testified during the trial of the defendant, and the substance of their testimony was that the models of the defendant's teeth matched each of the bite marks on the victim's body.

The defendant was indicted and tried for two counts of murder, one for shooting the victim Kilcoyne and one for felony murder based on robbery. The defendant had previously been sentenced on July 23, 1982, for a term of four years' imprisonment for the offense of residential burglary. He was released on parole on March 20, 1984. His parole term was cut short because this court issued an

opinion, which was affirmed by the supreme court, that his conviction should be reversed and the case remanded for a new trial. (*People v. Dace* (1983), 114 Ill. App. 3d 908, 449 N.E.2d 1031, *aff'd* (1984), 104 Ill. 2d 96, 470 N.E.2d 993.) The mandate of this court which officially ended defendant's appeal issued December 11, 1984. Subsequent to this date defendant was detained, albeit wrongfully as a parole violator, in the Will County jail from February 28, 1985, to March 6, 1985.

During defendant's trial, the State called Victor Moffett to testify. Moffett testified that he had been in the Will County jail since November 1984 on charges of home invasion, armed violence, and armed robbery and that on March 6, 1985, he asked the defendant what he was in jail for and the defendant indicated murder. It was Moffett's testimony that he also overheard the defendant telling other inmates that he had been in a bar and was reaching for money when the woman saw him and, when she went for her gun, he took it away from her and shot her in the head. Moffett also testified that he told the defendant it was cold-blooded murder, to which the defendant responded that if he hadn't done it she would have killed *them*. The defendant further made statements to the effect that he wanted to take the body to a quarry but his companion, "L.C.," did not want the body in his clean car.

Later on the busy day of March 6, 1985, Moffett spoke to his attorney, Bart Markese, and reported what the defendant had said. Markese in turn talked to the State's Attorney's office, and, on March 8, Moffett talked to Officer Baum in the State's Attorney's office about the defendant's remarks. A short time later Moffett was released from jail without posting bond. Moffett's codefendant had been tried and convicted; however, at the time of defendant's trial in February 1986, Moffett had not been tried. The defendant in the instant case was represented by attorney Gerald Kielian, an assistant public defender and also partner of Bart Markese in a law firm engaged in the private practice of law.

At the conclusion of the defendant's trial, the jury returned guilty verdicts on the two charges of murder and the court sentenced the defendant to a term of natural-life imprisonment upon the convictions.

Additional facts will be set forth when and if they become pertinent to a determination of the issues raised in this appeal.

■■ We first address defendant's contention that reversible error occurred and a new trial is mandated because a law partner of his counsel represented an important State witness against him at

the time of the trial and consequently his attorney labored under a *per se* conflict of interest.

It is not disputed that the attorney Bart Markese represented Moffett, who was a crucial witness against the defendant and who gave damaging testimony against him. It is also undisputed that Markese and defendant's attorney, Gerald Kielian, are partners in the private practice of law. The State does, however, argue that the conflict-of-interest issue has been waived because the point was not raised during trial or in defendant's post-trial motions. Normally failure to raise an issue in a motion for new trial constitutes waiver and the issue cannot be urged as the basis for reversal on appeal. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) However, a strong showing of an intentional and knowing waiver of a conflict-of-interest issue is required before the waiver rule will be applied. (*People v. Mathes* (1979), 69 Ill. App. 3d 275, 387 N.E.2d 39; *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402.) In the case at bar, the record is devoid of any indication that the defendant was adequately advised of the conflict-of-interest situation presented. Nor was he informed of the significance of conflicts of interest and how such conflict can affect, sometimes subtly, a client's representation. Furthermore, the fact that defendant's counsel, attorney Kielian, was assisted during the trial by attorney Scott Reich does not waive any conflict problem which might have been raised in a post-trial motion. It was Kielian who actually prepared and argued the motion for new trial. The two attorneys represented the defendant together. Reich, like Kielian, overlooked the conflict at trial, so it could not be expected that he (Reich) would function independently after the trial. This is not a case where the waiver rule should be applied.

Turning our attention to the underlying question as to whether defendant's attorney, Kielian, labored under a conflict of interest, we note that it is well settled that the constitutional guarantee of effective assistance of counsel implicitly includes an assurance that the defendant will enjoy the attorney's undivided loyalty, free from conflicting interests or inconsistent obligations. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.) When a claim of ineffective representation based on a conflict of interest is made, the defendant need not demonstrate prejudice when an actual or potential conflict of professional interest is shown. Prejudice will be presumed. *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67; *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.

■ In the instant case we are confronted with a situation where counsel for the defendant, Kielian, and counsel for the witness, Markese, were both appointed by the court to represent their respective clients by virtue of their positions as assistant public defenders. The State would argue that because the attorneys were both associated with the defender's office, there was not a *per se* conflict of interest. The State in advancing this argument overlooks one further ingredient, namely, that the attorneys were also partners of a law firm and jointly engaged in the general practice of law. It is well settled that the knowledge of one member of a law firm is imputed to other members of the firm. (*People v. Karas* (1980), 81 Ill. App. 3d 990, 401 N.E.2d 1026.) A conflict of interest for one member of a firm extends to all members of a firm. (*People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1269, 1274; *People v. Arreguin* (1981), 92 Ill. App. 3d 899, 416 N.E.2d 402.) In a case where two members of a firm represent clients with conflicting interests, it can only be concluded that you have a situation where the same attorney is representing both clients. In the instant case attorney Markese's relationship as counsel for Moffett and his knowledge of his client's case must be imputed to attorney Kielian, who represented the defendant. In the instant case we have a classic case of a *per se* conflict of interest which constitutes reversible error.

■ A remand of this case for a new trial being dictated, it is incumbent on this court to address another issue which is certain to recur during the retrial. The issue to be considered is whether there was probable cause for the issuance of a search warrant for photographs and impressions of defendant's teeth.

An essential portion of the State's case against the defendant consisted of the testimony of three forensic odontologists who compared the teeth marks on the victim's arm with the teeth of the defendant. The comparison was made by utilizing photographs and impressions of defendant's teeth. The photographs and impressions were obtained by executing a search warrant for them. The warrant issued on March 5, 1985, on the complaint of Officer Baum of the Joliet police department. The photographs and impressions were taken the following day. The defendant prior to trial moved to suppress this information; however, said motion was denied.

The precise question to be determined is whether the defendant's rights under the Federal and State constitutions were violated because the warrant was illegally obtained because of lack of probable cause. U. S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, sec. 6.

An examination of the complaint for search warrant discloses

that it contained only two allegations which relate to probable cause. It alleged that the defendant was the last person known to be present with the victim Kilcoyne while she was still alive and on duty at Rudy's 700 Club during the early morning hours of February 21, 1985. The complainant Baum made the further allegation that while interviewing the defendant on February 28, 1985, he was told by the defendant that he in fact was the last person in the club besides the victim and while there he entertained thoughts of having sex with her. The complaint did not indicate the time on February 21, 1985, when the victim's body was found, nor did it attempt to indicate the time of her death.

We fail to see any significance to the allegation that defendant stated to Officer Baum that he had entertained thoughts of having sex with the victim. The thoughts of the defendant about sex were not themselves a crime, nor were they connected to the events related in the complaint. What this court is confronted with is the determination of whether the sole allegation that defendant was the last person known to be with the victim while she was alive is sufficient to establish probable cause.

The State, in support of their argument that probable cause existed, cites cases stating certain fundamental rules, to wit, that the standard of assessing probable cause is the probability of criminal activity, not proof beyond reasonable doubt (*People v. Exline* (1983), 98 Ill. 2d 150, 456 N.E.2d 112), that probable cause must be determined from the standpoint of the police officer, and such determination must be based upon the totality of the circumstances (*People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498), and that the issuing judge interpret and test the supporting affidavits in a realistic fashion using common sense (*People v. Skinner* (1985), 136 Ill. App. 3d 119, 483 N.E.2d 399).

The foregoing cases cited by the State, as we stated, set forth guidelines but are of little assistance in determining the dispositive issue presented in this case. The State does cite one case that presents a situation somewhat similar to the one before us. The case is *People v. Gacy* (1984), 103 Ill. 2d 1, 468 N.E.2d 1171.

In *Gacy* the victim, Robert Piest, who was murdered, was a young man working in a pharmacy. His mother went to the store to pick him up from work. Piest told his mother to wait a few minutes, he needed to leave the store and talk to a contractor fellow about a summer job. Gacy, a contractor, had been seen in the store on the date in question, one time at 6 p.m. and a second time at 8:50 p.m., which was the proximate time Piest disappeared. After checking into

Gacy's background, it was learned that Gacy had a history of sexual offenses. Based on these allegations in the complaint our supreme court held that there was probable cause to issue a search warrant for the search of Gacy, his vehicles, and residence.

The State argues that *Gacy* supports an affirmance of the issuance of the search warrant in the instant case. We disagree. The complaint contained far more information than the one before us. It contained information that Gacy was the last person to be with Piest. The time period involved was a narrow one. Gacy and Piest left the pharmacy together at 8:50 p.m. and 20 minutes later Piest's mother began to search for him. The application for the warrant also contained a detailed and lengthy history of Gacy's criminal activity which included sexual crimes against 15- and 16-year-old youths.

While not cited in its brief, the State in the trial court in arguing against the motion to suppress relied on the case of *People v. Milone* (1976), 43 Ill. App. 3d 385, 356 N.E.2d 1350. *Milone* involves the taking of teeth impressions from a defendant pursuant to a warrant which was found to have been issued with probable cause. At 5:15 p.m. on a September evening in 1974, Sally Kandel, age 14, had dinner at home and at 6:10 p.m. left for a bicycle ride, promising to be home at 7 p.m. She never returned. Her absence was reported to the police at 10 p.m. and at 2 a.m. her bicycle was found along the side of a country road. At 5:50 a.m. Sally's body was discovered about 200 feet from her bicycle. She had been beaten to death and a bite mark had been made on her thigh after death had occurred. Near the body the police found a bar which was the handle to a Jewel shopping cart. This bar was determined to be the murder weapon. The defendant Milone's employer later reported that such a bar was missing from a cart in his warehouse. Other employees reported that the defendant carried the bar for his protection. The defendant also gave conflicting statements to the police.

In finding that probable cause existed for the issuance of a search warrant in *Milone*, it is obvious that the police had substantially more information linking the defendant to the homicide than the police had in the instant case. In *Milone* the police had information which they alleged established that the defendant could have been at the site of the murder at the time the victim Sally would have reached the area on her bicycle.

The defendant, in support of his argument that there was not probable cause, cites the case of *People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228. Our supreme court held that there was probable cause to arrest the defendant Creach for the murder of the victim,

Dolores Iroin, who was found murdered at approximately 7 a.m. in September 1973, near the C.T.A. tracks in Evanston. The police knew that the defendant Creach had been living with the victim and that she was killed sometime after midnight on a given date and that defendant had last seen the victim at 1:30 a.m. on that date and that defendant had unexplainably left for Ohio in the victim's car on the morning of her death. In *Creach* we have a theft and flight by a defendant in addition to knowledge that the defendant was the last person to see the victim alive. The defendant relies on *Creach* in support of his argument that for probable cause you need more information than the mere knowledge that a defendant was the last person to be with a victim. See also *People v. Schlemm* (1980), 82 Ill. App. 3d 639, 402 N.E.2d 810.

That defendant was the last person to be with the victim, Roseleen Kilcoyne, in Rudy's 700 Club during the early hours of February 21, 1985, may have given the police reason to suspect that he was involved in the homicide. Suspicion, however, does not constitute probable cause. (*People v. Davis* (1984), 124 Ill. App. 3d 813, 464 N.E.2d 1150.) The facts and circumstances within Officer Baum's knowledge would not warrant a man of reasonable caution believing that the defendant committed the offense. *People v. Francisco* (1970), 44 Ill. 2d 373, 255 N.E.2d 413.

■ We are unaware of any Illinois cases deciding the precise issue of whether probable cause exists where all the knowledge possessed by the police is that the defendant was the last person seen with the victim. A Federal case has held that such minimal knowledge does not support a finding of probable cause. (See *Woodard v. Sargeant* (E.D. Ark., 1983), 567 F. Supp. 1548.) To hold otherwise would be an invasion of constitutionally protected rights. It would permit intrusion upon the constitutional right to privacy and the seizure of fingerprint samples, blood samples, and dental impressions based upon suspicion and probability and not reasonable grounds or probable cause.

For the reasons stated the evidence relating to the photographs and impressions of the defendant's teeth should have been suppressed.

The conviction of the defendant by the circuit court of Will County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

STOUDER, J., concurs.

JUSTICE HEIPLE, concurring in part and dissenting in part:

I agree with the majority's determination that where counsel for the defendant and counsel for a crucial State's witness were both assistant public defenders of Will County as well as partners in a law firm and jointly engaged in the general practice of law, a *per se* conflict of interest exists which constitutes reversible error. This case must accordingly be sent back for retrial. However, I do not agree that the evidence relating to the photographs and impressions of the defendant's teeth should have been suppressed on the ground that the search warrant was issued without probable cause.

In the instant case, the complaint for the search warrant set forth the fact that the victim had been bitten approximately five times on her hands, arms, and shoulders. It also stated that the defendant admitted being the last person with the victim at the scene of the murder in the early morning hours of February 21, 1985. The victim's body was discovered on February 21, 1985. This was sufficient to establish a fair probability that evidence of a crime would be found from an impression of the defendant's teeth.

Rather than relying on well-established and commonly accepted principles for the issuance of a search warrant, the majority attempts to parse the particular facts of particular cases to justify their invalidation of this warrant. In short, in the absence of a "spotted cow" case with the same number, color, and location of spots, they are not going to justify this warrant. The majority's analysis misses the mark and the process itself is to be condemned.

To support the issuance of a search warrant, facts must be related to the issuing judge which establish a fair probability that evidence of a crime will be found in the place to be searched. The standard for assessing probable cause is the probability of a criminal activity, not proof beyond a reasonable doubt. Probable cause is not to be a determination rendered by a legal technician, but instead by a reasonable and prudent person dealing with the practical considerations of everyday life.

Clearly, the search warrant in this case falls well within those established legal guidelines. Accordingly, I dissent.