THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM REINBOLD, Defendant-Appellant.

Third District   No. 3—91—0119

Opinion filed July 20, 1993.—Rehearing denied August 16, 1993.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Raymond Kimbell III, State's Attorney, of Galesburg (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, William Reinbold, was convicted of first degree murder (720 ILCS 5/9—1(a)(1) (West 1992)) and was sentenced to natural-life imprisonment. He appeals.

The issues on appeal do not necessitate our setting forth most of the facts contained in the voluminous record of this case. However, a brief overview of some of the facts is appropriate.

The record reveals that sometime between 5 and 6 p.m. on December 26, 1988, Mary Clarke was attacked in the only laundromat in Farmington, Illinois. A trail of blood leading outside made it appear that Clarke's body had been dragged outside and placed in a vehicle which was subsequently driven away.

On December 27, 1988, at approximately 1:45 a.m., police located Clarke's body near a roadway three miles north of Farmington. The cause of death was determined to be brain injury caused by blunt trauma to the head.

On December 28, 1988, after hearing about the murder, Dixie Sulteen, a neighbor of the defendant, told police that on the day of the murder, she was talking with the defendant's wife on the telephone. She overheard the defendant say that he was going to the Farmington laundromat. A short while later, just before dark, she saw the defendant get in his car and drive away. Another witness observed the defendant driving towards Farmington between 4:30 and 4:45 p.m. on the day of the murder.

Subsequent to hearing from Sulteen, police talked to the defendant, his wife, and his son. They told police inconsistent stories about what happened and where the defendant went on the night of the murder.

On December 30, 1988, police observed the defendant at a car wash where he was about to clean the interior of his car. Police stopped him and talked with him. A subsequent search of the car revealed blood and hair in the trunk which was consistent with that of the victim. More blood consistent with that of the victim was found inside the car on the driver's seat belt buckle.

Police also searched a bus where the defendant sometimes stayed. There, a pry bar was found among the defendant's tools. The pry bar had bloodstains consistent with the blood of the victim. The forensic pathologist who performed the autopsy on the victim opined that the pry bar could have caused her injuries.

Following a jury trial, the defendant was found guilty of first degree murder. He was subsequently sentenced to life imprisonment. The defendant appeals.

The defendant's first contention on appeal is that the trial court erred in denying his motion to suppress evidence found in his car. The defendant argues that the complaint for the search warrant was not adequate since it failed to establish probable cause. See *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332.

While it is not necessary to restate the entire text of the detailed complaint, we do note that it indicated that sometime between 4 and 7 p.m. on Monday, December 26, 1988, Mary Clarke was attacked in the Brite Clean Laundromat in Farmington, Illinois. Police later located her jacket alongside a road about three miles north of Farmington. Shortly thereafter, they found her bloody body approximately 800 feet away from her jacket.

The complaint further alleged that on December 28, 1988, after hearing about the murder, the defendant's neighbor, Dixie Sulteen, went to the Farmington police department. She told police that on the day of the murder, shortly before dark, she heard the defendant say that he was going to the laundromat in Farmington. She then saw the defendant drive away.

Police also talked with the defendant's wife, who told them that she had a poor memory and whatever her husband said his activities were would be correct because he had a better memory than she did. She then stated that to her knowledge, her husband did not go to Farmington on the day of the murder.

The defendant's son, Billy, told police that on the day of the murder his father had gathered two baskets of laundry. Billy put the laundry in the back seat of the family car. His father then left and did not return until approximately 8:30 p.m. When he returned, Billy was told not to go downstairs. Because of that command, he did not see his father that evening.

On December 30, 1988, at approximately 1 p.m., police interviewed the defendant at his place of work in Fort Madison, Iowa. The defendant denied going to Farmington on the day of the murder. He also told police that he had Illinois license plates on his car for about one month. This statement was inconsistent with police observations that on December 27, 1988, the defendant's car had no license plates on it.

Lastly, the complaint alleged that on December 30, 1988, at 3:42 p.m., police observed the defendant attempting to clean the interior of his car at a car wash in Fort Madison. Police then approached him,

told him he was not under arrest, and indicated that they wanted to talk to him about the murder. At that point, the defendant told police that "Monday was a bad day."

We begin our analysis of whether the complaint was adequate by noting that the test for probable cause is whether the facts and circumstances were sufficient to warrant a person of reasonable caution to believe that the defendant committed an offense and that evidence of the offense was possessed by the defendant. (*People v. Stewart* (1984), 104 Ill. 2d 463, 473 N.E.2d 1227.) A complaint for a search warrant need not make a *prima facie* showing of criminal activity. (*People v. Gacy* (1984), 103 Ill. 2d 1, 468 N.E.2d 1171.) Rather, the complaint will be sufficient if, as a whole, it adequately establishes that there was a fair probability that evidence of a crime would be found in a particular place. (*People v. Gacy* (1984), 103 Ill. 2d 1, 468 N.E.2d 1171.) On review, the ruling of the trial judge on a defendant's motion to suppress should not be set aside unless it is manifestly erroneous. *People v. Stout* (1985), 106 Ill. 2d 77, 477 N.E.2d 498.

■ Based upon the statements of the defendant's neighbor and his son, we find that the complaint adequately set forth the probability that the defendant went to the laundromat on the day of the murder at around the time of the murder. The credibility of the defendant was weakened by the inconsistency between his statements and police observations regarding the license plates on his car. Thus, his denial of being at the laundromat on the day in question was dubious.

Additionally, the defendant's son indicated that on the day of the murder he was told not to come downstairs after his father returned home. Standing alone, this would merely arouse suspicion and not be enough to establish probable cause. (See *People v. Dace* (1987), 153 Ill. App. 3d 891, 506 N.E.2d 332.) However, in this case his statement augmented the other evidence and increased the probability that the defendant was somehow involved in the crime.

Finally, the complaint made it clear that the victim's bloody body had been transported three miles away from the laundromat. Thus, after the defendant's probable involvement in the crime was shown, it became probable that blood, hair, fingerprints, or other evidence of the crime would be found in his car.

It is our conclusion that the complaint, when considered in its entirety, adequately established that there was a fair probability that evidence of the crime would be found in the defendant's car. Accordingly, we cannot say that the trial court's decision denying the defendant's motion to suppress was manifestly erroneous.

The defendant's second contention on appeal is that the trial court abused its discretion by denying the defendant's challenges for cause of several veniremembers. The defendant argues that he was forced to exercise peremptory challenges on five veniremembers who should have been dismissed for cause. Additionally, he argues that two other veniremembers, who eventually sat on the jury because the defendant ran out of peremptory challenges, should have been dismissed for cause.

We begin by noting that as long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the sixth amendment was violated. (*Ross v. Oklahoma* (1988), 487 U.S. 81, 101 L. Ed. 2d 80, 108 S. Ct. 2273.) Accordingly, reversible error results, not from the defendant's exhaustion of his peremptory challenges, but rather from the end result of an unfair jury. (*People v. Gleash* (1991), 209 Ill. App. 3d 598, 568 N.E.2d 348.) Thus, our concern is with the impartiality of the two jurors who actually sat in judgment of the defendant, rather than that of the five veniremembers who were excused by peremptory challenges. See *People v. Johnson* (1987), 162 Ill. App. 3d 952, 516 N.E.2d 343; *People v. Washington* (1982), 104 Ill. App. 3d 386, 432 N.E.2d 1020; *People v. Harris* (1992), 231 Ill. App. 3d 876, 596 N.E.2d 1363; but see *People v. Johnson* (1991), 215 Ill. App. 3d 713, 575 N.E.2d 1247.

The defendant in the instant case unsuccessfully challenged the two jurors in question for cause after he had previously used all seven of his peremptory challenges. Additionally, his two requests for additional peremptory challenges were both denied. Thus, the defendant was compelled to accept the two jurors in question and any error in denying the challenges for cause was not waived. (See *People v. Washington* (1982), 104 Ill. App. 3d 386, 432 N.E.2d 1020; *People v. Amos* (1985), 140 Ill. App. 3d 14, 488 N.E.2d 290.) Accordingly, we turn our attention to the merits of the defendant's claim.

In so doing, we recognize that the right to trial by an impartial panel of jurors is one of the most priceless safeguards of individual liberty. (*Irvin v. Dowd* (1961), 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639.) A violation of that right requires a reversal. *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.

A person is not competent to sit as a juror if his mental attitude is such that a defendant will not receive a fair and impartial trial with him or her as a member of the jury. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) The determination of whether or not a prospective juror possesses the state of mind which will give an accused a

fair trial rests on the sound discretion of the trial court. (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.) The trial court's determination will not be set aside unless it is against the manifest weight of the evidence. *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705.

Of the two jurors in question, the defendant initially expresses "concerns" over the impaneling of Christine Hoosen. Apparently these concerns arise out of the fact that Ms. Hoosen's father was a State Police officer. Since the defendant's brief raises these concerns in a single sentence without citation, our discussion of Ms. Hoosen will be likewise brief.

■ A veniremember need not be excused merely because he or she is related to a police officer who was not involved in the case the veniremember is to hear. (*People v. Johnson* (1992), 149 Ill. 2d 118, 594 N.E.2d 253.) Accordingly, absent more, we cannot say that Ms. Hoosen should have been stricken from the jury.

We now turn our attention to the second juror that the defendant challenges on appeal, Maxine Thomas. The defendant claims that Ms. Thomas was not a fair and impartial juror because she thought that the defendant should prove his innocence and that he would be hiding something if he failed to testify.

In order to make the defendant's objection to Ms. Thomas more clear, we note that the following exchange took place during *voir dire*:

> "MR. STATHAM [Defense Counsel]: Do you have any preconceived notion or feelings as to his guilt or innocence as he sits here?
>
> JUROR THOMAS: No, I don't think I do.
>
> MR. STATHAM: And, will you hold the prosecution to their burden of proving to you beyond a reasonable doubt that the crime of murder has been committed here?
>
> JUROR THOMAS: Yes.
>
> MR. STATHAM: Do you want Bill to prove his innocence to you?
>
> JUROR THOMAS: Yes.
>
> MR. STATHAM: Do you understand the Judge instructed you he does not need to present any evidence at all?
>
> JUROR THOMAS: I know.
>
> MR. STATHAM: But, do you feel comfortable with that?
>
> JUROR THOMAS: Well, I would kinda like to hear his explanation.
>
> MR. STATHAM: If he fails to sit up here and testify, will you feel he has something to hide?

JUROR THOMAS: Probably.

MR. STATHAM: Will you hold that against him?

JUROR THOMAS: I might not hold it against him, but I would still say he had something to hide.

MR. STATHAM: Will that enter into your thought process as you sit in the jury room and try to decide guilt or innocence?

JUROR THOMAS: No, I don't think so.

MR. STATHAM: But, you still would like him to prove his innocence somehow?

JUROR THOMAS: Yes."

Later, Ms. Thomas again indicated that she felt the defendant should come forward with proof of his innocence:

"MR. STATHAM: Okay. Ms. Thomas, a similar concern with just one answer that you gave. And, I thought it was, as well, just like I talked in the beginning with Ms. Warner about it, that you desired, demanded, I'm not sure what, but there was something about the proof by the defendant of his own innocence. I say, when that kind of stuff comes up, I just go haywire, because he has no such burden. The only people with the burden here are the State.

JUROR THOMAS: That's why I would feel better if he tried to tell us he's innocent. I mean, if he had some kind of proof—.

THE COURT: Okay. If you were running the defense, then you would be thinking that that would be something that you would want to do?

JUROR THOMAS: Right."

■ These are only excerpts of the entire *voir dire* and we recognize that a court should not single out certain statements made during *voir dire* but should consider the examination of a juror as a whole to determine that individual's state of mind. (*People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.) Having scrutinized the *voir dire* as a whole, we are aware that the trial court did eventually manage to rehabilitate Ms. Thomas to some extent by drawing out some evidence of impartiality. However, a great proportion of the *voir dire* shows that her presence on the jury denied the defendant a fair trial because she expected the defendant to prove that he was innocent. (See *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.) Because the trial court's determination of Ms. Thomas' ability to be fair and impartial in the instant case was against the manifest weight of the evidence, we must reverse and remand for a new trial.

We note that in cases such as the instant one, where there is extensive pretrial publicity, the trial court should be cognizant of the

possibility that veniremembers will have predetermined a defendant's guilt or innocence. In such circumstances, the trial court should err on the side of caution and either grant adequate peremptory challenges or take greater care before denying challenges for cause when jurors indicate that they expect the defendant to prove his innocence. Because the trial court failed to do so here, we have no choice but to reverse and remand for a new trial.

The judgment of the circuit court of Knox County is reversed and this cause is remanded for a new trial.

Reversed and remanded.

BARRY and LYTTON, JJ., concur.