2020 IL App (1st) 171335-U

Order filed: January 24, 2020

FIRST DISTRICT

Fifth Division

No. 1-17-1335

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18971 |
| | ) | |
| ERIC BRAMWELL, | ) | Honorable |
| | ) | James N. Karahalios, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman concurred in the judgment.
Justice Delort specially concurred.

**ORDER**

¶ 1    *Held*: We reject defendant's contention that he was improperly tried *in absentia* without being represented by counsel. However, we remand for a retrospective fitness hearing and, if necessary, a new sentencing hearing, where the trial court: (1) failed to hold a fitness hearing after raising *bona fide* concerns regarding defendant, and (2) considered an improper sentencing factor.

¶ 2    Following a jury trial at which he was tried *in absentia*, defendant-appellant, Eric Bramwell, was convicted of a single count of burglary and sentenced to a 28-year term of imprisonment. For the following reasons, we vacate defendant's sentence and remand for a retrospective fitness hearing. If defendant is found fit following that hearing, he should receive a

new sentencing hearing; if he is found unfit, defendant's conviction and sentence should be vacated and he should receive a new trial.[1]

¶ 3                                    I. BACKGROUND

¶ 4      In November 2015, defendant was charged by indictment with one count each of burglary and theft. The burglary charge generally alleged that in May 2015, defendant entered an apartment complex clubhouse located in Hoffman Estates, IL, with the intent to commit a theft therein. In February 2016, defendant was charged in Cook County in six additional, unrelated indictments with multiple counts of burglary and theft, as well as criminal damage to property. At the time, defendant was in custody in DuPage County with respect to other, unrelated pending criminal charges.

¶ 5      After first being appointed a public defender, the trial court thereafter allowed defendant to represent himself *pro se* in March 2016. The State then elected to proceed only on the instant indictment. In July 2016, the trial court considered a host of pleadings and motions filed by defendant that referenced—*inter alia*—maritime law, admiralty, martial law, the Uniform Commercial Code, and the Social Security Act of 1935.

¶ 6      After reviewing all these documents with defendant, and finding some incomprehensible and "bankrupt," the trial court noted that it would "need to rely on some additional expertise here" and therefore ordered a behavioral clinical evaluation "based upon the trial court's *bona fide* concerns for this defendant." When defendant indicated that such an evaluation had been completed within the prior two weeks in DuPage County, resulting in a finding that defendant was

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

"[f]ully competent" to represent himself, the trial court instructed defendant to bring a copy of the report to the next court date. A written order entered by the trial court directed that defendant was to be evaluated for fitness, fitness with medication, sanity, and his ability to understand *Miranda* warnings.

¶ 7    Thereafter, defendant refused to be transported from DuPage County to attend multiple court dates in this matter, and DuPage County officials refused to do so against his will. In addition, the fact that defendant was in custody in DuPage County resulted in Cook County officials being unable to complete the fitness evaluation ordered by the trial court. Ultimately, this matter did not proceed to a jury trial until April 2017, and did so only after: (1) defendant was convicted of burglary in DuPage County and sentenced to a term of 22-years imprisonment, thus allowing the State to writ in defendant to Cook County from the Illinois Department of Corrections, and (2) the trial court received a copy of a court order entered in DuPage County following a fitness hearing conducted there, finding defendant fit to stand trial.

¶ 8    On the day set for trial, defendant became argumentative, profane and uncooperative in court, insisting that the trial court did not have jurisdiction to try this case. At various times, defendant walked out of the courtroom on his own, had to be brought to court in restraints, and was physically removed from the courtroom following a profanity-laced tirade. Ultimately, and only after defendant repeatedly refused to return to the courtroom for trial proceedings and/or was forced to be removed from the courtroom due to his behavior, the trial court concluded that defendant's behavior was a deliberate attempt to "invalidate and defeat any trial on the charges that [were] before him." As such, the trial court concluded that defendant had waived his right to be present and defendant was thereafter tried *in absentia* and without being represented by counsel.

¶ 9     At trial, employees of the apartment complex identified in the indictment testified that the clubhouse had been broken into in May 2015, and televisions, surveillance equipment, and other electronic equipment had been removed. A police detective testified that defendant had confessed to the crime, and a signed, written confession was published to the jury. At the conclusion of trial, the jury found defendant guilty of a single count of burglary. Defendant was informed of the verdict and, after being tried *in absentia*, defendant did participate in the subsequent sentencing proceedings.

¶ 10    A presentence investigation report was prepared, which reflected that defendant had 10 prior convictions for a host of crimes, including theft, burglary, armed robbery, endangering the health of a child, and criminal sexual abuse by force. At the sentencing hearing, defendant objected with respect to the latter two crimes—endangering the health of a child and criminal sexual abuse by force (case no. 00 C 401227)—contending that he was never convicted of those offenses.

¶ 11    Also at the sentencing hearing, the State introduced certified copies of five of defendant's prior convictions in aggravation. Notably, none of the copies were for the two convictions challenged by defendant. The State also presented testimony regarding a series of burglaries to another apartment complex in 2014, to which defendant allegedly confessed.

¶ 12    After asking defendant for any mitigating evidence, defendant engaged in numerous, extended profanity-laced outbursts and interruptions throughout the remainder of the sentencing hearing. Ultimately, the trial court sentenced defendant to a term of 28-years' imprisonment, to be served consecutively to the 22-year sentence defendant was already serving for his conviction in DuPage County. In imposing this sentence, the trial court specifically referenced defendant's 10 prior convictions—including the conviction for criminal sexual abuse by force—defendant's six pending indictments, as well as defendant's belligerent and profane behavior in court. The trial

court concluded that defendant was wholly unable to conform himself to the conduct required in a civilized society, and was a "chronic criminal from which the public deserves a break." The Sate moved to dismiss the indictments used in aggravation, and defendant timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendant contends that because his trial proceeded *in absentia* the trial court was required to appoint him counsel under section 115-4.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4.1(a) (West 2016)), which provides that if a defendant "fails to appear for trial" and the State proves that the defendant "is willfully avoiding trial," he may be tried *in absentia* but must be represented by retained or appointed counsel.

¶ 15    As defendant and the State both acknowledge, however, our supreme court rejected this very argument in *People v. Eppinger*, 2013 IL 114121, ¶ 40. There, based on the language in section 115-4.1(a), and considering the relevant legislative history, our supreme court held that section 115-4.1(a) is simply inapplicable to in-custody defendants, such as defendant here. While defendant contends that *Eppinger* was wrongly decided, "[a]s an intermediate appellate court, we are bound to honor our supreme court's conclusion on this issue unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court." *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23. As such, we decline defendant's invitation to abandon the *Eppinger* decision, and conclude he was not entitled to appointment of counsel under section 115-4.1(a).

¶ 16    Defendant next contends that the trial court erred in failing to conduct a fitness hearing after raising a *bona fide* concern regarding defendant's fitness, and that this matter should therefore be remanded for a retrospective fitness hearing. The State concedes this issue, and we concur.

¶ 17    "The fourteenth amendment's due process clause precludes the prosecution of a defendant who is unfit to stand trial." *People v. Smith*, 2017 IL App (1st) 143728, ¶ 84. A defendant is unfit to stand trial if he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense due to a mental or physical condition. 725 ILCS 5/104-10 (West 2016).

¶ 18    A criminal defendant is presumed fit to stand trial. 725 ILCS 5/104-10 (West 2016). The issue of a defendant's fitness for trial may be raised at any time, by either party or the court. *Id*. § 104-11(a). "When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." *Id*. Once a *bona fide* doubt has been raised, the burden is on the State to prove by a preponderance of the evidence that a defendant is fit to stand trial. *Id*. § 104-11(c). When the issue of fitness relates to a defendant's mental condition, the court shall appoint an expert to perform an examination. *Id*. § 104-13(a).

¶ 19    However, because the issue of a defendant's fitness to stand trial is one of constitutional dimension, "the record must show an affirmative exercise of judicial discretion regarding the determination of fitness." *People v. Contorno*, 322 Ill. App. 3d 177, 179 (2001). "A trial court's determination of fitness may not be based solely upon a stipulation to the existence of psychiatric conclusions or findings." *Id*. When the court fails to hold a fitness hearing after a *bona fide* doubt has been raised, it is now the norm to remand the cause for a retrospective fitness hearing. *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 38; *People v. Mitchell*, 189 Ill. 2d 312, 339 (2000).

¶ 20    Here, the trial court itself raised a *bona fide* doubt as to defendant's fitness. Rather than conducting its own fitness hearing and exercising its own judicial discretion regarding the determination of defendant's fitness, however, the trial court proceeded to trial based in sole reliance upon the fitness proceedings that occurred in a separate, unrelated criminal proceeding in DuPage County.

¶ 21    This was improper, and this matter must therefore be remanded for a retrospective fitness hearing. If, in the retrospective fitness hearing, the evidence is inconclusive or suggests that defendant was unfit, the trial court should order a new trial. See *Gipson*, 2015 IL App (1st) 122451, ¶ 38. If, alternatively, the trial court determines that defendant's fitness can be accurately assessed and confirmed, the trial court shall decline to grant a new trial, and defendant's conviction will stand. *Id*.

¶ 22    Finally, defendant asserts that this matter should be remanded for resentencing because: (1) the trial court relied upon an improper sentencing factor*, i.e.*, a conviction for criminal sexual abuse by force that did not actually exist, and (2) his 28-year sentence, to be served consecutively to a 22-year sentence imposed in DuPage County, is excessive. Because we agree with defendant's first contention, we vacate his sentence.

¶ 23    We first address two preliminary issues. First, the parties recognize that defendant forfeited this issue by failing to raise it below in a motion to reconsider his sentence. *People v. Burnett*, 237 Ill. 2d 381, 387 (2010) (filing a written motion to reconsider is required to preserve sentencing issues for appeal). Nevertheless, "a defendant has a right not to be sentenced based upon improper factors in aggravation, and a trial judge's reliance upon an improper factor in sentencing impinges upon a defendant's 'fundamental right to liberty.' [Citations.] Hence, we may consider defendant's argument on this point under the doctrine of plain error, despite his failure to raise the issue of the non-existent conviction in a written post-sentencing motion." *People v. Whitney*, 297 Ill. App. 3d 965, 969 (1998).

¶ 24    Second, we note that defendant asks this court to take judicial notice of documents attached as exhibits to his opening brief. These documents are comprised of portions of the record in one of defendant's prior criminal proceedings contained in the presentence report (case no. 00 C

401227) which do in fact indicate that, while defendant was originally charged with criminal sexual abuse by force, he actually pleaded guilty to battery and was sentenced to supervision, which was later revoked. "A reviewing court may take judicial notice of public records and other judicial proceedings." *People v. Jimerson*, 404 Ill. App. 3d 621, 634 (2010). More specifically, "our supreme court has made it clear that it is 'well within' our authority to take judicial notice of court records in related cases," including prior criminal proceedings involving a party. *People v. Torres*, 2019 IL App (1st) 151276, ¶ 36 (quoting *In re N.G.*, 2018 IL 121939, ¶ 32). Here, the State does not challenge the accuracy of these records, and we grant defendant's request that we take judicial notice of these records in our analysis of this issue.

¶ 25    "A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). One such improper factor is relying upon an erroneous prior conviction in aggravation at sentencing. *Whitney*, 297 Ill. App. 3d at 969. Generally, a trial court's sentencing decision will not be altered absent an abuse of discretion. *People v. Reed,* 376 Ill. App. 3d 121, 127 (2007). However, whether a court relied on an improper factor in imposing a sentence presents a question of law that we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 26    Here, it is apparent from the record that the trial court clearly and specifically relied upon defendant's purported prior conviction for criminal sexual abuse by force in crafting defendant's sentence. The trial court first specifically cited this conviction as among one of the 10 prior convictions upon which the trial court, in part, determined that a 28-year sentence was appropriate. The trial court then specifically relied upon this purported conviction a second time, as part of the trial court's justification for ordering that this sentence run consecutively. It is also apparent that

the trial court's reliance upon this purported conviction was improper, as the documents we take judicial notice of make it clear that no such conviction exists.

¶ 27    On this record we cannot say that "the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *Heider*, 231 Ill. 2d at 21. At the very least the record is inconclusive, and if " 'the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing.' " *People v. Walker*, 392 Ill. App. 3d 277, 302 (2009) (quoting *People v. Bourke*, 96 Ill. 2d 327, 332 (1983)). We therefore conclude that defendant's sentence must be vacated.

¶ 28

¶ 29                                  III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the circuit court is vacated in part and the cause is remanded with directions. Specifically, we vacate defendant's sentence and remand for a retrospective fitness hearing. If defendant is found fit following that fitness hearing, he should receive a new sentencing hearing. If he is instead found unfit, defendant's conviction and sentence should be vacated and he should receive a new trial.

¶ 31    Vacated in part.

¶ 32    Cause remanded with directions.

JUSTICE DELORT, specially concurring:

¶ 33    I concur with the majority's judgment, but I write separately to offer a few additional observations. First, the trial judge exhibited admirable restraint when faced with a criminal defendant who was persistently profane and disruptive. Second, the defendant's conduct was entirely consistent with "sovereign citizen" ideology, which is not recognized by Illinois law. *Parkway Bank v. Korzen*, 2013 IL App (1st) 130380. During one hearing, the defendant stated: "I

am a sovereign. I am a – not a citizen of the United States. I am a world citizen recognized under the United Nations general assembly." During another, he told the judge: "Don't tell me to be quiet. It's my court. I am a sovereign."

¶ 34    Dealing with an unruly and disrespectful party is difficult enough for judges and opposing litigants in civil cases, but criminal defendants pose special challenges because of the high level of constitutional protections which they enjoy. The conduct of some "sovereign citizens" is so bizarre that it suggests that they may be unfit for trial or lack the mental competency to understand the nature of the proceedings against them. Without in any way intending to direct the circuit court or the evaluator on remand, I simply note that the interplay of sovereign citizen ideology and mental fitness to stand trial has been the subject of numerous scholarly studies. These studies conclude that sovereign citizen ideologues are usually found to be competent to stand trial, and that these defendants employ certain tactics solely to disrupt the legal process. They otherwise meet the minimal legal standards for fitness to stand trial. See, *e.g.*, Cheryl M. Paradis, Elizabeth Owen, and Gene McCullough, *Evaluations of Urban Sovereign Citizens' Competency to Stand Trial*, 46 J. Am. Acad. Psychiatry Law, 158-66 (2018) (noting "In some cases, the defendants are motivated to annoy, exhaust, intimidate, or harass court personnel in the hope of having their case thrown out or of receiving a better plea deal" and concluding "as long as the defendant understands the risk of being convicted, the examiner is likely to conclude that he is competent to proceed"); Jennifer Pytyck and Gary A. Chaimowitz, *The Sovereign Citizen Movement and Fitness to Stand Trial*, 12 Int'l J. of Forensic Mental Health 2, 149-153 (2013) ("timely recognition and accurate assessment of Sovereign Citizen patients is crucial in order to minimize harm in the form of unnecessary treatment and hospitalization, as well as delays in court proceedings incurred by questions such as whether they are Unfit to Stand Trial."); George F. Parker, *Competence to Stand*

*Trial Evaluations of Sovereign Citizens: A Case Series and Primer of Odd Political and Legal Beliefs*, 42 J. Am. Acad. Psychiatry Law, 338-49 (2014) (concluding "a defendant who puts forward sovereign citizen beliefs in court or during a competence assessment is unlikely to lack the capacity to understand the nature and objectives of criminal proceedings or to be unable to assist his attorney").